**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**RESOLVE LAW GROUP**
Stuart Price, Esq. (SBN: 150439)
stuart@resolvelawgroup.com
6345 Balboa Blvd #247
Encino, CA 91316
Telephone: 818-995-4540

*Attorneys for Plaintiff,*
ALLEN RODRIGUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN RODRIGUEZ, on behalf of himself and those similarly situated,<br><br>                    Plaintiff,<br><br>       vs.<br><br>LEAD SENSEI, LLC,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ. (TCPA)**<br><br><br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1.      Plaintiff Allen Rodriguez ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit challenging the unlawful actions of LEAD SENSEI, LLC (referred to as "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited text messages to Plaintiff and the putative class on their respective cellular phones which are registered with the National Do-Not Call Registry ("DNC"), all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's unlawful conduct.

2.      Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3.      This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4.      Defendant sent numerous unsolicited text messages to Plaintiff's cellular telephone for the purpose of soliciting business from Plaintiff while Plaintiff's telephone number was registered with the DNC.

5.      Defendant has violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) by bombarding consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

6.      The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

7.      Plaintiff seeks an injunction requiring Defendant to cease all unsolicited text messages to numbers on the DNC, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and members of the Class (defined below) per violation, together with court costs, and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

8.      This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

9.      Personal jurisdiction is established because Defendant conducts business in the State of California. At all times relevant herein, Defendant conducted business in the State of California, and within this judicial district.

10.     Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred within this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, while Plaintiff resided in Pasadena, California, which is within this judicial district.

11.     Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

       a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

       b) Defendant does substantial business within this district;

       c) Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and markets within this district; and,

       d) the harm to Plaintiff originated from within this judicial district.

**PARTIES**

12.     Plaintiff is, and at all times mentioned herein is a resident of the State of California, County of Los Angeles.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

CLASS ACTION COMPLAINT

13.    Defendant is Georgia company with its place of business in Atlanta, Georgia.

14.    Defendant is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

15.    Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

16.    Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## TCPA BACKGROUND

17.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.    The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. §

64.1200(c).[1]

20.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."    TCPA, Pub.L. No. 102-243, § 11.    Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

21.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.    A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

22.    Text messages are calls and are subject to the TCPA.    *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

23.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

24.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

25.    As of October 16, 2013, unless the recipient has given prior express written consent,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- • Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- • Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- • Prohibit autodialed calls that engage two or more lines of a multi-line business.

- • Prohibit unsolicited advertising faxes.

- • Prohibit certain calls to members of the DNC.

26.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

27.    With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this one additional call

CLASS ACTION COMPLAINT

1  does not yield actual knowledge of reassignment, we deem the caller to have
2  constructive knowledge of such." *Id.*  Thus, any second call placed to a wrong number
3  violates the TCPA.

4  28.    The TCPA provides for damages in the amount of $500 for each negligent
5  violation and treble damages of $1,500 for each knowing or willful violation. *See* 47
6  U.S.C. § 227(c)(5).

7  **FACTUAL ALLEGATIONS**

8  29.    Defendant is a financial services company.

9  30.    In Defendant's overzealous attempt to market its services, however, Defendant
10  willfully or knowingly sent (and continues to send) (a) unsolicited telemarketing text
11  messages without the prior express written consent of the recipients and (b) unsolicited
12  telemarketing text messages to persons who have registered their cellular telephone
13  number on the DNC.

14  31.    Through this conduct, Defendant have invaded the privacy of Plaintiff and the
15  members of the Class.

16  32.    At all times relevant, Plaintiff was a citizen of the State of California.  Plaintiff
17  is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. §
18  153(39).

19  33.    Defendant is, and at all times mentioned herein was, a company and a "person,"
20  as defined by 47 U.S.C. § 153(39).

21  34.    At all times relevant Defendant conducted business in the State of California and
22  in the County of Los Angeles, within this judicial district.

23  35.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular
24  telephone number of ending in 5040 ("Cell Phone"). Plaintiff is the sole user and/or
25  subscriber of his Cell Phone.

26  36.    Plaintiff's Cell Phone was registered on the National Do Not Call Registry since
27  on or about September 13, 2018.

28  37.    Defendant has sent numerous text message solicitations to Plaintiff on his Cell

Phone.[3]

38.    Specifically, on May 5, 2025, at approximately 9:36 A.M., Defendant sent a telemarketing text message to the Plaintiff's Cell Phone from the telephone number (229) 484-9097.

39.    Further, on May 6, 2025, at approximately 9:36 A.M., Defendant sent another telemarketing text message to the Plaintiff's Cell Phone from the telephone number (229) 484-9097.

40.    At no point did the Plaintiff provide prior express consent for any of the text messages that Defendant sent Plaintiff.

41.    Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

42.    Plaintiff's Cell Phone number was on the DNC since December 10, 2004.

43.    Plaintiff received numerous telephone solicitations from Defendant within a 12-month period within the four years prior to the filing of the Complaint, and more than 31 days after his Cell Phone registration on the DNC.

44.    Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to message his Cell Phone.

45.    Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

46.    Plaintiff did not have a personal relationship with Defendant at any point in time.

47.    Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to message Plaintiff's cellular telephone for marketing or solicitation purposes.

48.    The text message Defendant sent to Plaintiff consisted of a pre-written template

---

[3]    According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

of impersonal text and was identical to text messages Defendant sent to other consumers.

49.    Upon information and belief, Defendant sent substantially similar, if not identical, unsolicited messages *en masse* to Plaintiff and thousands of other consumers who were also registered with the DNC for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

50.    Defendant sent numerous unsolicited text messages to Plaintiff to his Cell Phone which was registered with the DNC for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

51.    Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

52.    Upon information and belief, Defendant did not make the telephone solicitations in error.

53.    Each of the above unsolicited telephonic communications by Defendant and/or their agents violated 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

54.    Receiving Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

55.    Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

56.    Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or their agents continued to send unsolicited and unauthorized text messages to Plaintiff's cellular telephone.

57.    Defendant's telephonic communications forced Plaintiff to be deprived of the privacy and utility of his cellular phone by forcing Plaintiff to ignore or reject

1  Defendant's disruptive messages, dismiss alerts, and/or silence his cellular phone as a

2  result of Defendant's incessant telephone solicitations.

3  58.    The TCPA was intended to give individuals control over how and where they

4  receive telephonic communications.   When Defendant sent the text messages to

5  Plaintiff without his consent, Defendant failed to address or respect the limitations

6  imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated

7  the spirit and intent behind the TCPA.

8  59.    Defendant's violations caused Plaintiffs to suffer real and concrete harm in the

9  form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of

10 cellular phone use, and natural and foreseeable stress and frustration in connection with

11 the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got*

12 *Warranty, Inc*., No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va.

13 June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the

14 consumer has a prepaid cell phone or a plan with a limited number of minutes. The

15 main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2)

16 intrusion upon and occupation of the capacity of the consumer's cell phone, and (3)

17 wasting the consumer's time or causing the risk of personal injury due to interruption

18 and distraction.").

19 60.    Through the aforementioned conduct, Defendant each repeatedly violated the

20 TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

21                                  **STANDING**

22 61.    Standing is proper under Article III of the Constitution of the United States of

23 America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable

24 to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial

25 decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016); *Lujan v. Defenders*

26 *of Wildlife*, 504 U.S. 555, 560 (1992).

27                         ***The "Injury in Fact" Prong***

28 62.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to

satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

63. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent a telephone solicitation to Plaintiff's cellular telephone. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

64. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by texting his cellular telephone, despite Plaintiff's registering his telephone number with the DNC. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time opening and reading the text message. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

65. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

66. The above-mentioned text messages were directly and explicitly linked to Defendant. Defendant's text message identified the Defendant; "this is Kyle from DaysNotYears"; "this is Katie rom DaysNotYears." DaysNotYears is an independently owned and operated by Defendant. These text messages are the sole source of Plaintiff's and the Class's injuries and directly traceable to Defendant. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

67. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial

opinion.

68. In the present case, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each text message made by Defendant and telephone calls to cellular numbers on the DNC, as authorized by statute in 47 U.S.C. § 227. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

69. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## **CLASS ACTION ALLEGATIONS**

70. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined is follows:

> All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

71. Excluded from the Class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

72. Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

73. Further, Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the DNC, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class. Plaintiff and the Class members were

damaged thereby.

74.    <u>Numerosity</u>: Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. The exact number of the members of the Class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of Class members nationwide during the Class Period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

75.    <u>Ascertainability</u>: The members of the Class are ascertainable because the Class is defined by reference to objective criteria. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

76.    <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

77.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited text messages to his cellular telephone from Defendant while his number was registered on the National Do Not Call Registry. Thus, his injuries are typical to Class Members.

78.    Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

79.    Plaintiff's claims are based on the same theories, as are the claims of the

members of the Class.

80.    Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones without prior express consent while they were registered on the National Do Not Call Registry. Plaintiff and the Class were damaged thereby.

81.    Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the Class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class. Plaintiff will vigorously pursue the claims of the members of the Class. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

82.    Predominance: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

83.    Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

CLASS ACTION COMPLAINT

a.    What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b.    Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message to the members of the Class whose telephone numbers were on the DNC;

c.    Whether Defendant's conduct violated the TCPA;

d.    Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

e.    Whether Defendant should be enjoined from engaging in such conduct in the future.

99.    <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

•    If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

•    The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

•    The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

•    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

•    The damages suffered by each individual member of the Class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

100.  Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

101.  Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

102.  A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with applicable law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

103.  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

104.  This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §§ 227, ET SEQ.

105.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

106.    Defendant and/or its agents placed unsolicited text messages to Plaintiff and the other members of the Class.

107.    Defendant made these text messages *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

108.    Defendant's conduct was negligent, willful or knowing.

109.    Defendant knew or should have known that it did not have prior express written consent to send these text messages in violation of the TCPA.

110.    Defendant negligently, willfully, and/or knowingly allowed unsolicited text messages to be sent to Plaintiff and Class members. For instance, Defendant could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and/or Class members, yet disregarded such information and sent the illegal and unwanted solicitation text messages to Plaintiff and the Class.

111.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

112.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5). Under 47 C.F.R. § 64.1200(c), "[n]o person or entity shall initiate any telephone

solicitation to . . . (2) [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

113.    Under 47 C.F.R. § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(c) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers.

> "(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."
> 47 C.F.R. § 64.1200(e).

114.    Plaintiff and Class members registered their telephone numbers with the DNC so as to not receive calls from entities like Defendant.

115.    Plaintiff and members of the Class received more than one marketing text message within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

116.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

117.    Defendant sent unsolicited and unauthorized text messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

118.    Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

119.    Defendant willfully or knowingly allowed text messages to be sent to Plaintiff's

and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

120.   Defendant's text messages caused Plaintiff and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

121.   Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(c).

122.   Because Plaintiff and members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

123.   As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

124.   As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

125.   Plaintiff and class members also suffered damages in the form of invasion of privacy.

126.   Plaintiff and class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

127.   Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

CLASS ACTION COMPLAINT

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(c).

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(c);

- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(c);

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

128.   Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: May 29, 2025                    Respectfully submitted,

                                       **KAZEROUNI LAW GROUP, APC**


                                By:    <u>*/s/ Gustavo Ponce*</u>
                                       Abbas Kazerounian, Esq.
                                       David J. McGlothlin, Esq.
                                       Mona Amini, Esq.
                                       Gustavo Ponce, Esq.
                                       *Attorneys for Plaintiff*

- 21 -

CLASS ACTION COMPLAINT